FILED
2024 Mar-26 PM 12:23
U.S. DISTRICT COURT
N.D. OF ALABAMA

# EXHIBIT B

DocuSign Envelope ID: 2B82EC7B-9DD9-476F-A145-1AE69610A5FA
Case 2:24-cv-00374-ACA   Document 1-2   Filed 03/25/24   Page 2 of 11
THIS IS A COPY
This is a copy view of the Authoritative Copy held by the designated custodian

# Security Agreement

This Security Agreement (this *"Agreement"*) is entered into as of October 25, 2022 between B&H BRANDS LLC DBA JDOG JUNK REMOVAL & HAULING , an Alabama limited liability company, with its chief executive office located at 625 CHELSEA STATION CIR, CHELSEA, AL 35043-3076 (the *"Borrower"*) and Cadence Bank, a Mississippi State Chartered Bank, with an address of 7908 N SAM HOUSTON PKWY WEST STE 100, HOUSTON, TX 77064 (*"Bank"*).

FOR VALUE RECEIVED, and in consideration of the granting by Bank of financial accommodations to or for the benefit of the Borrower, including without limitation respecting the Obligations (as herein defined), the Borrower represents to and agrees with Bank, as of the date hereof and as of the date of each loan, credit and/or other financial accommodation, as follows:

## 1. Definitions

**1.1 Definitions.** The following definitions shall apply:

(A) *"Bank Affiliate"* shall mean any affiliate of Bank or any lender acting as a participant under any loan arrangement between Bank and the Borrower(s). The term *"Affiliate"* shall mean with respect to any person, (a) any person which, directly or indirectly through one or more intermediaries controls, or is controlled by, or is under common control with, such person, or (b) any person who is a director or officer (i) of such person, (ii) of any subsidiary of such person, or (iii) any person described in clause (a) above. For purposes of this definition, control of a person shall mean the power, direct or indirect, (x) to vote 5% or more of the Capital Stock having ordinary voting power for the election of directors (or comparable equivalent) of such person, or (y) to direct or cause the direction of the management and policies of such person whether by contract or otherwise. Control may be by ownership, contract, or otherwise.

(B) *"Code"* shall mean the *Texas Uniform Commercial Code*, Title 1 *Texas Business & Commerce Code* as amended from time to time.

(C) *"Collateral"* shall mean all of the Borrower's present and future right, title and interest in and to any and all of the property described below, whether such property is now existing or hereafter created, arising or acquired, and wherever located from time to time:

    (1) New General Equipment ALL BUSINESS ASSETS & EQUIPMENT.
    (2) All supporting obligations.
    (3) All proceeds of Collateral of every kind and nature in whatever form, including, without limitation, both cash and noncash proceeds resulting or arising from the sale or other disposition of the Collateral.
    (4) All records and products of and accessions to any of the Collateral.

(D) *"Debtors"* shall mean the Borrower's customers who are indebted to the Borrower.

(E) *"Obligation(s)"* shall mean, without limitation, all loans, advances, indebtedness, notes, liabilities and amounts (including under Letters of Credit), liquidated or unliquidated, owing by the Borrower to Bank at any time, of each and every kind, nature and description, whether arising under this Agreement or otherwise, and whether secured or unsecured, direct or indirect (that is, whether the same are due directly by the Borrower to Bank; or are due indirectly by the Borrower to Bank as endorser, guarantor or other surety, or as borrower of obligations due third persons which have been endorsed or assigned to Bank, or otherwise), absolute or contingent, due or to become due, now existing or hereafter arising or contracted, including, without limitation, payment when due of all amounts outstanding respecting any of the Loan Documents. Said term shall also include all interest and other charges chargeable to the Borrower or due from the Borrower to Bank from time to time and all costs and expenses referred to in this Agreement.

(F) *"Person"* or *"party"* shall mean individuals, partnerships, corporations, limited liability companies and all other entities.

Security Agreement-Commercial
© 2020 Wolters Kluwer Financial Services, Inc.
All rights reserved.
2022102521.1.2.3998-N20220427Y
A2022102489538 12 SECAGRMT YYY
04/2022
Page 1 of 7

All words and terms used in this Agreement other than those specifically defined herein shall have the meanings accorded to them in the Code.

## 2. Grant of Security Interest

**2.1 Grant of Security Interest.** In consideration of Bank's extending credit and other financial accommodations to or for the benefit of the Borrower, the Borrower hereby grants to Bank a security interest in, a lien on and pledge and assignment of the Collateral (as herein defined). The security interest granted by this Agreement is given to and shall be held by Bank as security for the payment and performance of all Obligations (as herein defined), including without limitation, all amounts due and owing to Bank and all obligations respecting that certain Quarterly Adjustable Term Note, dated October 25, 2022, by B&H BRANDS LLC DBA JDOG JUNK REMOVAL & HAULING in favor of Bank in the original principal amount of $300,000.00 (the *"Note"*; and collectively, along with all other agreements, documents, certificates and instruments delivered in connection therewith, the *"Loan Documents"*), and any substitutions, modifications, extensions or amendments to any of the Loan Documents.

**2.2 Ordinary Course of Business.** Except as stated herein, Bank hereby authorizes and permits the Borrower to hold, process, sell, use or consume in the manufacture or processing of finished goods, or otherwise dispose of inventory for fair consideration, all in the ordinary course of the Borrower's business, excluding, without limitation, sales to creditors or in bulk or sales or other dispositions occurring under circumstances which would or could create any lien or interest adverse to Bank's security interest or other rights hereunder in the proceeds resulting therefrom. Except as otherwise expressly provided herein or in any other Loan Documents, Bank also hereby authorizes and permits the Borrower to receive from the Debtors all amounts due as proceeds of the Collateral at the Borrower's own cost and expense, and also liability, if any, subject to the direction and control of Bank at all times; and Bank may at any time, without cause or notice, and whether or not an Event of Default has occurred or demand has been made, terminate all or any part of the authority and permission herein or elsewhere in this Agreement granted to the Borrower with reference to the Collateral, and notify Debtors to make all payments due as proceeds of the Collateral to Bank. Until Bank shall otherwise notify the Borrower, all proceeds of and collections of Collateral shall be retained by the Borrower and used solely for the ordinary and usual operation of the Borrower's business. From and after notice by Bank to the Borrower, all proceeds of and collections of the Collateral shall be held in trust by the Borrower for Bank and shall not be commingled with the Borrower's other funds or deposited in any Bank account of the Borrower; and the Borrower agrees to deliver to Bank on the dates of receipt thereof by the Borrower, duly endorsed to Bank or to bearer, or assigned to Bank, as may be appropriate, all proceeds of the Collateral in the identical form received by the Borrower.

**2.3 Allowances.** Absent an Event of Default the Borrower may grant such allowances or other adjustments to Debtors (exclusive of extending the time for payment of any item which shall not be done without first obtaining Bank's written consent in each instance) as the Borrower may reasonably deem to accord with sound business practice, including, without limiting the generality of the foregoing, accepting the return of all or any part of the inventory (subject to the provisions set forth in this Agreement with reference to returned inventory).

**2.4 Condition of Property.** Borrower shall keep the Collateral in good condition, working order and repair. Borrower shall pay on or before the due date or discharge as applicable all taxes and assessments, encumbrances, charges, rents and liens affecting all or any part of the Collateral.

**2.5 Records.** The Borrower shall hold its books and records relating to the Collateral segregated from all the Borrower's other books and records in a manner satisfactory to Bank; and shall deliver to Bank from time to time promptly at its request all invoices, original documents of title, contracts and any other writings relating thereto; and the Borrower will deliver to Bank promptly at Bank's request from time to time additional copies of any or all of such papers or writings, and such other information with respect to any of the Collateral and such other writings as Bank may in its sole discretion deem to be necessary or effectual to evidence any loan hereunder or Bank's security interest in the Collateral.

**2.6 Legends.** The Borrower shall promptly make, stamp or record such entries or legends on the Borrower's books and records or on any of the Collateral (including, without limitation, chattel paper) as Bank shall request from time to time, to indicate and disclose that Bank has a security interest in such Collateral.

**2.7 Inspection.** Bank, or its representatives, at any time and from time to time, shall have the right at the sole cost and expense of Borrower, and the Borrower will permit Bank and/or its representatives:

Security Agreement-Commercial
© 2020 Wolters Kluwer Financial Services, Inc.
All rights reserved.
2022102521.1.2.3998-N20220427Y

A2022102489538 12 SECAGRMT YYY
04/2022
Page 2 of 7

DocuSign Envelope ID: 2B82EC7B-9DD9-476F-A145-1AE69610A5FA
THIS IS A COPY
This is a copy view of the Authoritative Copy held by the designated custodian

(A) to examine, check, make copies of or extracts from any of the Borrower's books, records and files (including, without limitation, orders and original correspondence);

(B) to perform field exams or otherwise inspect and examine the Collateral and to check, test or appraise the same as to quality, quantity, value and condition; and

(C) to verify the Collateral or any portion or portions thereof or the Borrower's compliance with the provisions of this Agreement.

**2.8 Purchase Money Security Interests.** To the extent the Borrower uses proceeds of any loans to purchase Collateral, the repayment of such loans shall be on a "first-in-first-out" basis so that the portion of the loan used to purchase a particular item of Collateral shall be repaid in the order in which the Borrower purchased such item of Collateral.

**2.9 Search Reports.** Bank shall receive prior to the date of this Agreement UCC search results under all names used by the Borrower during the prior five (5) years, from each jurisdiction where any Collateral is located, from the State, if any, where the Borrower is organized and registered (as such terms are used in the Code), and the State where the Borrower's chief executive office is located, if applicable, or, if any Borrower is an individual, then the State of the individual Borrower's principal residence. The search results shall confirm that the security interest in the Collateral granted Bank hereunder is prior to all other security interests in favor of any other person.

## 3. Representations and Warranties

**3.1 B&H BRANDS LLC DBA JDOG JUNK REMOVAL & HAULING 's Name and Public Organic Record.** B&H BRANDS LLC DBA JDOG JUNK REMOVAL & HAULING 's name printed on the signature page hereof is B&H BRANDS LLC DBA JDOG JUNK REMOVAL & HAULING 's name as shown on B&H BRANDS LLC DBA JDOG JUNK REMOVAL & HAULING 's most recent public organic record. B&H BRANDS LLC DBA JDOG JUNK REMOVAL & HAULING will not change its name as reflected on its public organic record without providing Bank at least a 30 day written notice thereof.

**3.2 Division Prohibited.** B&H BRANDS LLC DBA JDOG JUNK REMOVAL & HAULING is accurately identified, has neither divided nor plans to divide itself into one or more resulting limited liability companies or series which has not already been fully and completely disclosed to Bank, and does not have any pending or impending judicial action that could result in the cancellation of B&H BRANDS LLC DBA JDOG JUNK REMOVAL & HAULING 's formation.

## 4. Affirmative Covenants

**4.1 Inspection.** The Borrower will at all reasonable times make its books and records available in its offices for inspection, examination and duplication by Bank and Bank's representatives and will permit inspection of the Collateral and all of its properties by Bank and Bank's representatives. The Borrower will from time to time furnish Bank with such information and statements as Bank may request in its sole discretion with respect to the Obligations or Bank's security interest in the Collateral.

## 5. Default

**5.1 Default.** *"Event of Default"* shall mean the occurrence of one or more of any of the following events:

(A) default of any liability, obligation, covenant or undertaking of the Borrower or any guarantor of the Obligations to Bank, hereunder or otherwise, including, without limitation, failure to pay in full and when due any installment of principal or interest or default of the Borrower or any guarantor of the Obligations under any other Loan Document or any other agreement with Bank;

(B) failure of the Borrower or any guarantor of the Obligations to maintain aggregate collateral security value satisfactory to Bank;

(C) default of any material liability, obligation or undertaking of the Borrower or any guarantor of the Obligations to any other party;

(D) if any statement, representation or warranty heretofore, now or hereafter made by the Borrower or any guarantor of the Obligations in connection with this Agreement or in any supporting financial statement of the Borrower or any guarantor of the Obligations shall be determined by Bank to have been false or misleading in any material respect when made;

Security Agreement-Commercial
© 2020 Wolters Kluwer Financial Services, Inc.
All rights reserved.      2022102521.1.2.3998-N20220427Y

A2022102489538 12 SECAGRMT YYY
04/2022
Page 3 of 7

DocuSign Envelope ID: 2B82EC7B-9DB9-476F-A145-1AE69610A5FA
Case 2:24-cv-00374-ACA   Document 1-2   Filed 03/25/24   Page 5 of 11
THIS IS A COPY
This is a copy view of the Authoritative Copy held by the designated custodian

(E) if the Borrower or any guarantor of the Obligations is a corporation, trust, partnership or limited liability company, the liquidation, termination or dissolution of any such organization, or the division, merger or consolidation of such organization into another entity, or its ceasing to carry on actively its present business or the appointment of a receiver for its property;

(F) the death of the Borrower or any guarantor of the Obligations and, if the Borrower or any guarantor of the Obligations is a partnership or limited liability company, the death of any partner or member;

(G) the institution by or against the Borrower or any guarantor of the Obligations of any proceedings under the *Bankruptcy Code* 11 USC §101 *et seq.* or any other law in which the Borrower or any guarantor of the Obligations is alleged to be insolvent or unable to pay its debts as they mature, or the making by the Borrower or any guarantor of the Obligations of an assignment for the benefit of creditors or the granting by the Borrower or any guarantor of the Obligations of a trust mortgage for the benefit of creditors;

(H) the service upon Bank of a writ in which Bank is named as trustee of the Borrower or any guarantor of the Obligations;

(I) a judgment or judgments for the payment of money shall be rendered against the Borrower or any guarantor of the Obligations, and any such judgment shall remain unsatisfied and in effect for any period of thirty (30) consecutive days without a stay of execution;

(J) any levy, lien (including mechanics lien), seizure, attachment, execution or similar process shall be issued or levied on any of the property of the Borrower or any guarantor of the Obligations;

(K) the termination or revocation of any guaranty of the Obligations; or

(L) the occurrence of such a change in the condition or affairs (financial or otherwise) of the Borrower or any guarantor of the Obligations, or the occurrence of any other event or circumstance, such that Bank, in its sole discretion, deems that it is insecure or that the prospects for timely or full payment or performance of any obligation of the Borrower or any guarantor of the Obligations to Bank has been or may be impaired.

**5.2 Acceleration.** If an Event of Default shall occur, at the election of Bank, all Obligations shall become immediately due and payable without notice or demand, except with respect to Obligations payable on DEMAND, which shall be due and payable on DEMAND, whether or not an Event of Default has occurred. In addition, Bank may require that the Borrower remit to Bank cash collateral in an amount equal to 110% of the aggregate undrawn amount of all outstanding Letters of Credit at such time, such cash collateral to be held by Bank in a cash collateral account on terms and conditions satisfactory to Bank.

Bank is hereby authorized, at its election, after an Event of Default or after Demand, without any further demand or notice except to such extent as notice may be required by applicable law, to take possession and/or sell or otherwise dispose of all or any of the Collateral at public or private sale; and Bank may also exercise any and all other rights and remedies of a secured party under the Code or which are otherwise accorded to it in equity or at law, all as Bank may determine, and such exercise of rights in compliance with the requirements of law will not be considered adversely to affect the commercial reasonableness of any sale or other disposition of the Collateral. If notice of a sale or other action by Bank is required by applicable law, unless the Collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, the Borrower agrees that ten (10) days written notice to the Borrower, or the shortest period of written notice permitted by such law, whichever is smaller, shall be sufficient notice; and that to the extent permitted by law, Bank, its officers, attorneys and agents may bid and become purchasers at any such sale, if public, and may purchase at any private sale any of the Collateral that is of a type customarily sold on a recognized market or which is the subject of widely distributed standard price quotations. Any sale (public or private) shall be without warranty and free from any right of redemption, which the Borrower shall waive and release after default upon Bank's request therefor, and may be free of any warranties as to the Collateral if Bank shall so decide. No purchaser at any sale (public or private) shall be responsible for the application of the purchase money. Any balance of the net proceeds of sale remaining after paying all Obligations of the Borrower to Bank shall be returned to such other party as may be legally entitled thereto; and if there is a deficiency, the Borrower shall be responsible for repayment of the same, with interest. Upon demand by Bank, the Borrower shall assemble the Collateral and make it available to Bank at a place designated by Bank which is reasonably convenient to Bank and the Borrower. The Borrower hereby acknowledges that Bank has extended credit and other financial accommodations to the Borrower upon reliance of the Borrower's granting Bank the rights and remedies contained in this Agreement including without limitation the right to take immediate possession of the Collateral upon the occurrence of an Event of Default or after DEMAND with respect to Obligations payable on

Security Agreement-Commercial
© 2020 Wolters Kluwer Financial Services, Inc.
All rights reserved.
2022102521.1.2.3998-N20220427Y
A2022102489538 12 SECAGRMT YYY
04/2022
Page 4 of 7

DocuSign Envelope ID: 2B82EC7B-9DB9-476F-A145-1AE69610A5FA

THIS IS A COPY
This is a copy view of the Authoritative Copy held
by the designated custodian

DEMAND and the Borrower hereby acknowledges that Bank is entitled to equitable and injunctive relief to enforce any of its rights and remedies hereunder or under the Code and the Borrower hereby waives any defense to such equitable or injunctive relief based upon any allegation of the absence of irreparable harm to Bank.

Bank shall not be required to marshal any present or future security for (including but not limited to this Agreement and the Collateral subject to the security interest created hereby), or guarantees of, the Obligations or any of them, or to resort to such security or guarantees in any particular order; and all of its rights hereunder and in respect of such securities and guaranties shall be cumulative and in addition to all other rights, however existing or arising. To the extent that it lawfully may do so, the Borrower hereby agrees that it will not invoke and irrevocably waives the benefits of any law relating to the marshaling of collateral which might cause delay in or impede the enforcement of Bank's rights under this Agreement or under any other instrument evidencing any of the Obligations or under which any of the Obligations is outstanding or by which any of the Obligations is secured or guaranteed. Except as required by applicable law, Bank shall have no duty as to the collection or protection of the Collateral or any income thereon, nor as to the preservation of rights against prior parties, nor as to the preservation of any rights pertaining thereto beyond the safe custody thereof.

**5.3 Power of Attorney.** The Borrower hereby irrevocably constitutes and appoints Bank as the Borrower's true and lawful attorney, with full power of substitution, at the sole cost and expense of the Borrower but for the sole benefit of Bank, upon the occurrence of an Event of Default or after DEMAND with respect to Obligations payable on DEMAND, to convert the Collateral into cash, including, without limitation the sale (either public or private) of all or any portion or portions of the Collateral; to sign and endorse the name of the Borrower on documents of title of the same or different nature relating to the Collateral; to receive as secured party any of the Collateral; or other to sign and file or record on behalf of the Borrower any financing or other statement in order to perfect or protect Bank's security interest. Bank shall not be obliged to do any of the acts or exercise any of the powers hereinabove authorized, but if Bank elects to do any such act or exercise any such power, it shall not be accountable for more than it actually receives as a result of such exercise of power, and it shall not be responsible to the Borrower except for willful misconduct in bad faith. All powers conferred upon Bank by this Agreement, being coupled with an interest, shall be irrevocable so long as any Obligation of the Borrower to Bank shall remain unpaid or Bank is obligated under this Agreement or any other Loan Document to extend any credit to the Borrower.

**5.4 Nonexclusive Remedies.** All of Bank's rights and remedies not only under the provisions of this Agreement but also under any other agreement or transaction shall be cumulative and not alternative or exclusive, and may be exercised by Bank at such time or times and in such order of preference as Bank in its sole discretion may determine.

## 6. Miscellaneous

**6.1 Costs and Expenses.** The Borrower shall pay to Bank on demand any and all costs and expenses (including, without limitation, reasonable attorneys' fees and disbursements, court costs, litigation and other expenses) incurred or paid by Bank in establishing, maintaining, protecting or enforcing any of Bank's rights or the Obligations, including, without limitation, any and all such costs and expenses incurred or paid by Bank in defending Bank's security interest in, title or right to the Collateral or in collecting or attempting to collect or enforcing or attempting to enforce payment of the Obligations.

**6.2 Counterparts.** This Agreement may be executed in two or more counterparts, each of which shall be an original, but all of which shall constitute but one agreement.

**6.3 Severability.** If any provision of this Agreement or portion of such provision or the application thereof to any person or circumstance shall to any extent be held invalid or unenforceable, the remainder of this Agreement (or the remainder of such provision) and the application thereof to other persons or circumstances shall not be affected thereby.

**6.4 Complete Agreement.** This Agreement and the other Loan Documents constitute the entire agreement and understanding between and among the parties hereto relating to the subject matter hereof, and supersedes all prior proposals, negotiations, agreements and understandings among the parties hereto with respect to such subject matter.

**6.5 Binding Effect of Agreement.** This Agreement shall be binding upon and inure to the benefit of the respective heirs, executors, administrators, legal representatives, successors and assigns of the parties hereto, and shall remain in full force and effect (and Bank shall be entitled to rely thereon) until released in writing by Bank. Notwithstanding any such termination, Bank shall have a security interest in all Collateral to secure the payment and performance of Obligations arising after such termination as a result of commitments or undertakings made or entered into by

Security Agreement-Commercial
© 2020 Wolters Kluwer Financial Services, Inc.
All rights reserved.
2022102521.1.2.3998-N20220427Y
A2022102489538 12 SECAGRMT YYY
04/2022
Page 5 of 7

DocuSign Envelope ID: 2B82EC7B-9DD9-476F-A145-1AE69610A5FA

Case 2:24-cv-00374-ACA   Document 1-2   Filed 03/25/24   Page 7 of 11

THIS IS A COPY
This is a copy view of the Authoritative Copy held
by the designated custodian

Bank prior to such termination. Bank may transfer and assign this Agreement and deliver the Collateral to the assignee, who shall thereupon have all of the rights of Bank; and Bank shall then be relieved and discharged of any responsibility or liability with respect to this Agreement and the Collateral. The Borrower may not assign or transfer any of its rights or obligations under this Agreement. Except as expressly provided herein or in the other Loan Documents, nothing, expressed or implied, is intended to confer upon any party, other than the parties hereto, any rights, remedies, obligations or liabilities under or by reason of this Agreement or the other Loan Documents.

**6.6 Further Assurances.** The Borrower will from time to time execute and deliver to Bank such documents, and take or cause to be taken, all such other or further action, as Bank may request in order to effect and confirm or vest more securely in Bank all rights contemplated by this Agreement and the other Loan Documents (including, without limitation, to correct clerical errors) or to vest more fully in or assure to Bank the security interest in the Collateral granted to Bank by this Agreement or to comply with applicable statute or law and to facilitate the collection of the Collateral (including, without limitation, the execution of stock transfer orders and stock powers, endorsement of promissory notes and instruments and notifications to obligors on the Collateral). To the extent permitted by applicable law, the Borrower authorizes Bank to file financing statements, continuation statements or amendments, and any such financing statements, continuation statements or amendments may be filed at any time in any jurisdiction. Bank may at any time and from time to time file financing statements, continuation statements and amendments thereto which contain any information required by the Code for the sufficiency or filing office acceptance of any financing statement, continuation statement or amendment, including whether the Borrower is an organization, the type of organization and any organization identification number issued to the Borrower. The Borrower agrees to furnish any such information to Bank promptly upon request. In addition, the Borrower shall at any time and from time to time take such steps as Bank may reasonably request for Bank (i) to obtain an acknowledgment, in form and substance satisfactory to Bank, of any bailee having possession of any of the Collateral that the bailee holds such Collateral for Bank, (ii) to obtain *"control"* (as defined in the Code) of any Collateral comprised of deposit accounts, electronic chattel paper, letter of credit rights or investment property, with any agreements establishing control to be in form and substance satisfactory to Bank, and (iii) otherwise to insure the continued perfection and priority of Bank's security interest in any of the Collateral and the preservation of its rights therein. The Borrower hereby constitutes Bank its attorney-in-fact to execute, if necessary, and file all filings required or so requested for the foregoing purposes, all acts of such attorney being hereby ratified and confirmed; and such power, being coupled with an interest, shall be irrevocable until this Agreement terminates in accordance with its terms, all Obligations are irrevocably paid in full and the Collateral is released.

**6.7 Amendments and Waivers.** This Agreement may be amended and the Borrower may take any action herein prohibited, or omit to perform any act herein required to be performed by it, if the Borrower shall obtain Bank's prior written consent to each such amendment, action or omission to act. No course of dealing and no delay or omission on the part of Bank in exercising any right hereunder shall operate as a waiver of such right or any other right and waiver on any one or more occasions shall not be construed as a bar to or waiver of any right or remedy of Bank on any future occasion.

**6.8 Notice of Final Agreement. THIS AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.** This Agreement shall continue in full force and effect so long as any Obligations or obligation of the Borrower to Bank shall be outstanding, or Bank shall have any obligation to extend any financial accommodation hereunder, and is supplementary to each and every other agreement between the Borrower and Bank and shall not be so construed as to limit or otherwise derogate from any of the rights or remedies of Bank or any of the liabilities, obligations or undertakings of the Borrower under any such agreement, nor shall any contemporaneous or subsequent agreement between the Borrower and Bank be construed to limit or otherwise derogate from any of the rights or remedies of Bank or any of the liabilities, obligations or undertakings of the Borrower hereunder, unless such other agreement specifically refers to this Agreement and expressly so provides.

**6.9 Notices.** Any notice under or pursuant to this Agreement shall be a signed writing or other authenticated record (within the meaning of Article 9 of the Code). Any notices under or pursuant to this Agreement shall be deemed duly received and effective if delivered in hand to any officer or agent of the Borrower or Bank, or if mailed by registered or certified mail, return receipt requested, addressed to the Borrower or Bank at the address set forth in this Agreement or as any party may from time to time designate by written notice to the other party.

Security Agreement-Commercial
© 2020 Wolters Kluwer Financial Services, Inc.
All rights reserved.                                    2022102521.1.2.3998-N20220427Y

A2022102489538 12 SECAGRMT YYY
04/2022
Page 6 of 7

DocuSign Envelope ID: 2B82EC7B-9DD9-476F-A145-1AE69610A5FA
Case 2:24-cv-00374-ACA Document 1-2 Filed 03/25/24 Page 8 of 11
THIS IS A COPY
This is a copy view of the Authoritative Copy held by the designated custodian

**6.10 Governing Law.** This Agreement shall be governed by federal law applicable to Bank and, to the extent not preempted by federal law, the laws of the State of Texas without giving effect to the conflicts of laws principles thereof.

**6.11 Reproductions.** This Agreement and all documents which have been or may be hereinafter furnished by the Borrower to Bank may be reproduced by Bank by any photographic, photostatic, microfilm, xerographic or similar process, and any such reproduction shall be admissible in evidence as the original itself in any judicial or administrative proceeding (whether or not the original is in existence and whether or not such reproduction was made in the regular course of business).

**6.12 Jurisdiction and Venue.** The Borrower irrevocably submits to the nonexclusive jurisdiction of any Federal or state court sitting in Texas, over any suit, action or proceeding arising out of or relating to this Agreement. The Borrower irrevocably waives, to the fullest extent it may effectively do so under applicable law, any objection it may now or hereafter have to the laying of the venue of any such suit, action or proceeding brought in any such court and any claim that the same has been brought in an inconvenient forum. The Borrower hereby consents to any and all process which may be served in any such suit, action or proceeding, (i) by mailing a copy thereof by registered and certified mail, postage prepaid, return receipt requested, to the Borrower's address shown in this Agreement or as notified to Bank or (ii) by serving the same upon the Borrower in any other manner otherwise permitted by law, and agrees that such service shall in every respect be deemed effective service upon Borrower.

## Signatures

Executed as of October 25, 2022.

**Borrower**

**B&H BRANDS LLC DBA JDOG JUNK REMOVAL & HAULING**
*an Alabama limited liability company*

_____  10/25/2022
**JON BINZER**                          **Date**
*MEMBER*

_____  10/25/2022
**JAMES MCCLURE**                       **Date**
*MEMBER*

**Cadence Bank**
*a Mississippi State Chartered Bank*

_____  10/25/2022
**Gary Arnold**                         **Date**

Security Agreement-Commercial
© 2020 Wolters Kluwer Financial Services, Inc.
All rights reserved.
2022102521.1.2.3998-N20220427Y
A2022102489538 12 SECAGRMT YYY
04/2022
Page 7 of 7

DocuSign Envelope ID: 2B82EC7B-9DD9-476F-A145-1AE60610A5FA
Case 2:24-cv-00374-ACA   Document 1-2   Filed 03/25/24   Page 9 of 11
THIS IS A COPY
This is a copy view of the Authoritative Copy held by the designated custodian

# FIRST AMENDMENT

# TO THE SECURITY AGREEMENT

**Granting Party:** B&H Brands LLC DBA Jdog Junk Removal & Hauling
**Loan No.** 172001110717

THIS FIRST AMENDMENT to the Security Agreement (herein, "Security Agreement") is made this 25th day of October, 2022, and is incorporated into and shall be deemed to amend the Security Agreement of the same date given by the undersigned (herein, the "Granting Party," whether there are one or more persons undersigned) to secure the U.S. Small Business Administration Note (herein, the "Subject Note") issued by **Cadence Bank** (herein, the "Lender").

All capitalized terms used but not specifically defined by this First Amendment shall have the same meanings as assigned to them in the Security Agreement. Except as specified herein, all of the terms and conditions of the Security Agreement apply to this First Amendment. To the extent there is any conflict between any provision of this First Amendment and the Security Agreement, the terms of this First Amendment shall control. The Security Agreement, as amended by this First Amendment, shall remain in full force and effect, except as modified herein. This First Amendment is not intended to be, and shall not be construed to constitute, a novation of the Security Agreement.

The Granting Party and the Lender covenant and agree that if any prior, current, or future loans or debts, other than the Subject Note, between the Granting Party and the Lender (herein, the "Other Debts"), are cross-collateralized and secured through the Security Agreement, and such Other Debts are also secured by any means by a building, structure, or by real estate (herein, the "Secured Property") located in an area designated as a special flood hazard area ("SFHA") by the Administrator of the Federal Emergency Management Agency (herein, the "SFHA Debts"), the following provisions of this First Amendment will become effective immediately upon such Secured Property becoming located in a SFHA (the "SFHA Date").

**Collateral Release.** Notwithstanding any language to the contrary in the Security Agreement or any other document related to the Subject Note (herein, collectively, the "Loan Documentation"), the Lender releases and disclaims in full that portion of its security interest securing the Subject Note that is comprised of collateral secured by a SFHA Debt document or a SFHA Debt contract or agreement between the Granting Party and the Lender. As of the SFHA Date, the Lender shall not retain, via a cross-collateralization provision in any of the Loan Documentation or otherwise, a security interest for the Subject Note in any SFHA Debt or the collateral securing any SFHA Debt.

**No Other Changes to the Scope of the Collateral.** Beyond the changes to the scope of the Lender's security interest for the Subject Note rendered by the preceding paragraph, no other aspect of the Lender's collateral or security interest

1

DocuSign Envelope ID: 2B82EC7B-9DD9-476F-A14F-1AE69610A5FA
Case 2:24-cv-00374-ACA   Document 1-2   Filed 03/25/24   Page 10 of 11
THIS IS A COPY
This is a copy view of the Authoritative Copy held by the designated custodian

for the Subject Note, as defined by the Loan Documentation, is modified by this First Amendment. This First Amendment does not affect, to any extent, the scope of the collateral or security interest securing the Subject Note, other than the changes set forth in the preceding paragraph.

**The First Amendment Shall Control for All Conflicts.** To the extent that the scope of the Lender's security interest for the Subject Note, as modified by this First Amendment, does not align with the scope of the security interest as defined by any other provision of the Loan Documentation, the Granting Party and the Lender agree that this First Amendment shall control for all purposes in any conflicts regarding the scope of the Lender's security interest taken for the Subject Note after the date this First Amendment is executed by the Granting Party and the Lender.

**No Other Rights or Remedies Affected.** Except as modified herein, nothing shall otherwise impair, alter or diminish the effect, lien or encumbrance of the Security Agreement or other Loan Documentation, or any of the rights and remedies of the holder thereof.

The above provisions shall not become effective prior to the SFHA Date.

DocuSign Envelope ID: 2B82EC7B-9DD9-476F-A14F-1AE69610A5FA
Case 2:24-cv-00374-ACA   Document 1-2   Filed 03/25/24   Page 11 of 11
THIS IS A COPY
This is a copy view of the Authoritative Copy held by the designated custodian

BY SIGNING BELOW, the Granting Party accepts and agrees to the terms and covenants contained in this First Amendment.

Executed as of October 25, 2022.

**Granting Party:**
**B&H BRANDS LLC DBA JDOG JUNK REMOVAL & HAULING**
*an Alabama limited liability company*

_____
Jon Binzer, Member


**Granting Party:**

_____
James McClure, Member


**Cadence Bank:**

_____
Gary Arnold, SBA Closer

3